**SO ORDERED.**

**DONE and SIGNED January 24, 2022.**



_____
**JOHN S. HODGE**
**UNITED STATES BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case Number: 21-10421 |
| | § | |
| Lucien Harry Marioneaux, Jr. | § | Chapter 11 |
|   Debtor | § | |
| | § | |

## <u>Memorandum Ruling</u>

This case involves a lawyer who is in chapter 11 bankruptcy. The case arises out of litigation that has been ongoing for more than six years between Debtor and two judgment creditors. The judgment arose from Debtor's breaches of trust, mismanagement of funds, failure to account and fraud. The judgment creditors hold claims exceeding $8 million.

Before the court is a motion filed by the judgment creditors that seeks the appointment of a trustee. They allege that Debtor should be removed as a debtor in possession because he committed fraud and failed to perform various essential

duties of a debtor in possession. The court held a two-day evidentiary hearing on the motion.

For reasons that follow, the court finds that "cause" exists for the appointment of a trustee as contemplated under 11 U.S.C. § 1104(a)(1). The court also finds that the appointment is in the interests of creditors and other interests of the estate as contemplated under 11 U.S.C. § 1104(a)(2). Accordingly, a trustee must be appointed.

## Background

The salient facts are summarized below:

1.     On June 4, 2021, certain creditors commenced this proceeding against Lucien Harry Marioneaux, Jr. ("**Debtor**") by filing an involuntary petition in this court requesting relief under chapter 7 of the Bankruptcy Code. Debtor initially challenged the involuntary petition and the venue of this case. However, on August 31, 2021, an agreed order for relief was entered under chapter 7. Debtor then requested that his case be converted to one under chapter 11. The court converted the case on August 31, 2021.

2.     Upon conversion, Debtor remained in possession of all property of the estate and was vested with the rights, powers, and duties of a "debtor in possession" as set forth in 11 U.S.C. § 1107.

3.     Debtor is licensed to practice law in the State of Louisiana. He also holds an accounting degree.

4.     Before the commencement of this case, Debtor was involved in two

state court proceedings pending in Louisiana. Those actions are referred to herein as the "Trust Litigation" and the "Succession Proceeding," more particularly described as: *Marioneaux vs. Marioneaux*, Case No. 588,685-A, First Judicial District Court, Caddo Parish, Louisiana and *Succession of Lucien H. Marioneaux*, Case No. 594,235-B, First Judicial District Court, Caddo Parish, Louisiana.

5.     The Trust Litigation was filed by Mary Sue Marioneaux and the Lela Mae Johnson Marioneaux Trust. They are also the petitioning creditors in this bankruptcy case. Among other things, the suit alleges that Debtor and his father committed breaches of trust and fraud. Soon after the Trust Litigation was commenced, Debtor's father died. His father's succession was substituted as a defendant. After a trial on the merits, the court entered a judgment (the "**Trust Judgment**") finding that Debtor and his father breached their fiduciary duties as trustees of various trusts and fraudulently deprived Mary Sue Marioneaux and her trust of valuable assets. The Trust Judgment stated that Debtor breached his fiduciary capacity as a trustee, "including the duty of loyalty, by engaging in intentional acts of willful fault, misconduct, gross negligence and fraud" in his administration of certain trusts at issue in that litigation. (Doc. 152-1). The trial court rendered judgment against Debtor, his father's succession, and the various companies to which they diverted the trust money and property. Among other things, the judgment awarded over $6 million in monetary damages plus judicial interest and over $1.5 million in attorney fees and other costs. The judgment also required Debtor to return property that had been improperly diverted from the

trusts. The trial court permitted Debtor to file a "suspensive appeal" with respect to certain portions of the judgment and a "devolutive appeal" with respect to the remainder.[1] (Doc. 11-2, p. 5). The appeal is pending.

6.      When Debtor's father passed away, the Succession Proceeding was commenced in the same court where the Trust Litigation is pending. There are different judges presiding over the Trust Litigation and the Succession Proceeding.

7.      Debtor's father died without a will. Debtor is the only descendant and intestate heir of his father's estate. Subject to the appeal in the Trust Litigation, the judgment creditors have claims against Debtor's father's estate in the Succession Proceeding.

8.      Debtor was the original independent administrator in the Succession Proceeding but, following entry of the Trust Judgment, he was removed as the administrator, in part for his failure to properly inventory and account for the assets of his father's succession. (Doc. 11-5). Thereafter, a successor administrator was appointed by the state court, but he later resigned. (Doc. 11-6). There is no current administrator in place in the Succession Proceeding.

9.      This court entered an order modifying the automatic stay to: (a) allow the appeal of the Trust Judgment to proceed; and (b) allow the administration of the Succession Proceeding to proceed. However, no acts to collect, assess, enforce, or recover upon any order or judgment in the Trust Litigation and/or the Succession

---

[1] Under Louisiana law, a suspensive appeal is one that suspends the effect or execution of a judgment. LA. CODE CIV. PROC. art. 2123. By contrast, a judgment creditor may enforce a judgment subject to a devolutive appeal as soon as the delays for suspensive appeal have elapsed. LA. CODE CIV. PROC. art. 2252.

Proceeding against the Debtor or against any property of the bankruptcy estate are permitted absent further order of this court.

10.    Debtor holds or controls interests in a complex web of various entities. Debtor asserts that he owns 100% of the membership interest in Pilotage Holdings, LLC, which in turn holds:

a.    a 100% membership interest in MarionAV, LLC;

b.    a 100% membership interest in LHM Holdings, LLC;

c.    a 100% membership interest in Marioneaux Law Firm, APLLC;

d.    a 51% membership interest in Come On Dawg, LLC;

e.    an undetermined percentage interest in Galenfeha, Inc.;

f.    a 100% membership interest in Insanis, LLC;

g.    a 90% membership interest in Zero Tango Echo, LLC;

h.    a 50% membership interest in Wallace Lake Marioneaux, LLC;

i.    a 100% membership interest in LHM2 Oil & Gas, LLC;

j.    a 100% membership interest in Marioneaux Auto Group, LLC; and

k.    a 50% membership interest in Marioneaux Management, LLC, which, in turn, purportedly owns a 1.496409% general partnership interest in Marioneaux Properties, L.P., a Texas limited partnership.

11.    Debtor also asserts that he owns a 50% membership interest in Marioneaux & Williams, A Texas Professional Corporation, which owns a 100% interest in Marioneaux & Williams, LLC, a Louisiana limited liability company (the law firm through which Debtor practices law).

12.     Debtor further asserts that he holds an indirect interest, through his father's succession, in the following entities (the "**Succession Entities**")[2]:

a.     a 50% membership interest in Marioneaux Management, LLC (the other 50% interest is purportedly owned by Pilotage Holdings, LLC);

b.     a 48.86273% limited partnership interest in Marioneaux Properties, L.P. (in which Marioneaux Management, LLC serves as the general partner and Debtor serves as the manager of the LLC) which, in turn, owns:

    i.     a 100% membership interest in HBM Interests, LLC;

    ii.     a 100% membership interest in HBM CMS, LLC; and

    iii.     a 100% membership interest in HBM Oil & Gas, LLC.

c.     a 100% membership interest in LHM Oil & Gas, LLC;

d.     a 100% membership interest in LHM Holdings, LLC;

e.     a 50% membership interest in Wallace Lake Marioneaux, LLC; and

f.     a 50% membership interest in 80 Acres, LLC.

13.     These entities own significant assets that have substantial value, including a jet, mineral interests, a condominium in New Orleans, Louisiana, a lake house in Mount Ida, Arkansas, various automobiles, money, and other property.

14.     As a practical matter, Debtor controls all Succession Entities and their assets, subject to the limitations imposed on him by the state court presiding over

---

[2] Louisiana Civ. Code art. 935 provides, in part: "Immediately at the death of the decedent, universal successors acquire ownership of the estate and particular successors acquire ownership of the things bequeathed to them."

the Succession Proceeding.

15.     The judgment creditors own interests in various Succession Entities,

including a 49.640861% limited partnership interest in Marioneaux Properties, L.P.

## Conclusions of Law and Analysis

### A. <u>Jurisdiction, venue and core status</u>

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b)

and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a)

and LR 83.4.1.  Venue is proper in this district.  28 U.S.C. §§ 1408 and 1409(a).

This matter constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### B. <u>The Appointment of a Trustee</u>

By default, a chapter 11 debtor is a "debtor in possession," 11 U.S.C. §

1101(1), and has virtually all the rights, powers and duties of a trustee.  11 U.S.C. §

1107(a).  If, however, the court finds that "cause" exists for the appointment of a

trustee, or that such an appointment is in the interests of creditors and other

interests of the estate, the court must order the appointment of a trustee.  11 U.S.C.

§ 1104(a)(1), (2).  The provisions dealing with the appointment of trustees are not

discretionary.  If grounds exist for the appointment of a trustee, then a trustee must

be appointed.

The Bankruptcy Code provides:

(a) At any time after the commencement of the case but before
confirmation of a plan, on request of a party in interest or the United
States trustee, and after notice and a hearing, the court **shall** order
the appointment of a trustee –

(1) **for cause, including fraud, dishonesty, incompetence, or**

**gross mismanagement** of the affairs of the debtor by current management, either before or after the commencement of the case, **or similar cause**, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; **or**

(2) if such appointment is in the **interests of creditors**, any equity security holders, **and other interests of the estate**, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a) (emphasis added).

**1. <u>Standard of Proof</u>**

The moving parties bear the burden of establishing that a chapter 11 trustee should be appointed, but courts are split regarding the standard of proof that must be met. A majority of courts hold that the moving party must meet this burden by a clear and convincing standard of proof. *See In re Bayou Grp., LLC*, 564 F.3d 541, 546 (2nd Cir. 2009); *In re G-I Holdings, Inc.*, 385 F.3d 313, 318 (3rd Cir. 2004). A minority of courts hold that the standard of proof is a preponderance of the evidence threshold. *See In re Keeley & Grabanski Land P'ship*, 455 B.R. 153, 163 (B.A.P. 8th Cir. 2011). Although the Fifth Circuit initially ruled that the clear and convincing standard should apply, it later withdrew the portion of its opinion which delt with this issue. *Matter of Cajun Elec. Power Coop., Inc.,* 69 F.3d 746, 749 (5th Cir. 1995), *withdrawn in part,* 74 F.3d 599 (5th Cir. 1996). Thus, the Fifth Circuit has not weighed in on the split. Bankruptcy courts within the Fifth Circuit have, however, continued to use the clear and convincing standard. *See*, for example, *In re Nat'l Rifle Ass'n of Am.,* 628 B.R. 262, 283 (Bankr. N.D. Tex. 2021) ("The appointment of a Chapter 11 trustee is an extraordinary remedy that requires a

movant to meet their burden of proof by clear and convincing evidence.").

It is not necessary for this court to decide the proper standard of proof because regardless of whether the court employs a preponderance of the evidence standard or a clear and convincing standard, the moving parties have met their burden. The facts, when viewed in their totality, warrant the appointment of a chapter 11 trustee in this case.

### 2. **For Cause – 11 U.S.C. § 1104(a)(1)**

Section 1104(a)(1) enumerates four types of misconduct that constitute cause: fraud, dishonesty, incompetence, and gross mismanagement. These examples are not exhaustive. In this case, the court finds that Debtor engaged in both enumerated and non-enumerated misconduct as set forth below.

### *Fraud, Dishonesty, Incompetence and Gross Mismanagement*

Prior to the commencement of this case, two different state court judges issued rulings which called into question Debtor's competence and trustworthiness. Each judge independently concluded that Debtor failed to perform his duty as a trustee or administrator to properly account for property that was under his administration. This court would be hard-pressed to justify letting Debtor remain as a debtor in possession when two separate judges have already concluded that he is not trustworthy and is not willing to provide an accurate accounting of property under his control.

The state court presiding over the Trust Litigation concluded that Debtor

breached his fiduciary capacity as a trustee, "including the duty of loyalty, by engaging in intentional acts of willful fault, misconduct, gross negligence and fraud" in his administration of certain trusts. (Doc. 152-1). This court will rely on those findings. Although the judgment is on appeal, it is not subject to review by a federal court under the *Rooker–Feldman* doctrine and the Full Faith and Credit Act, 28 U.S.C. § 1738, which require federal courts to give state-court judgments the same preclusive effect they would have in another court of the same state. *In re Nazu, Inc.*, 350 B.R. 304, 314 (Bankr. S.D. Tex. 2006); *Houston v. Venneta Queen*, 606 F. App'x 725, 732 (5th Cir.), *cert. denied sub nom.* 136 S. Ct. 503 (2015), reh'g denied, 136 S. Ct. 882, (2016) ("pendency of additional state-court proceedings is immaterial to the application of *Rooker–Feldman*").

In the Succession Proceeding, the judge took the rare step of removing Debtor from serving as an independent administrator of an estate in which he is the sole heir. The court took such action because Debtor – who is a lawyer and holds an accounting degree – failed or refused to provide an inventory and accounting of the succession's assets. (Doc. 11-5).

Importantly, the duties that were at issue in the state court litigation are nearly identical to the duties imposed on a debtor in possession in a chapter 11 case, including the duty to be accountable for all property received. 11 U.S.C. §§ 704(a)(2), 1106(a)(1) and 1107(a). Debtor's repeated failure to perform similar duties imposed by applicable non-bankruptcy law prior to the commencement of this case justifies the appointment of a trustee in this case.

### *Failure to Comply with Provisions of*
### *the Bankruptcy Code and Bankruptcy Rules*

Noncompliance with the Bankruptcy Code and Bankruptcy Rules is conduct that constitutes cause under § 1104(a)(1). *In re Sillerman*, 605 B.R. 631, 642 (Bankr. S.D.N.Y. 2019). The record is replete with examples of Debtor's failure to comply with duties imposed by statutes and rules, including the omission of material assets from his bankruptcy schedules and the filing of a materially inaccurate statement of financial affairs.

Among the duties of every chapter 11 debtor is the duty to file accurate schedules of assets and liabilities and a statement of financial affairs. 11 U.S.C. § 521(a)(1)(B). Fed. R. Bankr. P. 1007(b). *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207–08 (5th Cir.1999) ("It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets…[.]"). The Fifth Circuit has long recognized that this duty of disclosure is a continuing one and a debtor is required to disclose all assets. *In re Flugence*, 738 F.3d 126, 129, n. 1 (5th Cir. 2013) (collecting cases). As noted by the Supreme Court, "[a] debtor's asset schedules are filed under penalty of perjury," *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 378 (2007); See also, Fed. R. Bank. P. 1008 ("All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746.").

Debtor failed to comply with his duties in the following material respects:

First, in response to Question 1 on Official Form 106, Schedule A/B, (Doc. 53, p. 4-5), Debtor failed to list his interest in a valuable piece of real estate in DeSoto Parish (the "third tract"). Although his Schedules identified two other tracts, he did not list the third tract. It is estimated that Debtor's interest in the third tract is worth approximately $111,435.00. (Doc. 159-1, p. 3). At the hearing, Debtor was shown two publicly recorded Acts of Donation (which bear his signature accepting the donation), one of which granted him an undivided five percent interest in the third tract, (Doc. 155-5, p. 81), and the other of which granted him an undivided twelve percent interest in the third tract. (Doc. 155-5, p. 84). Debtor replied that he did not have an understanding that the third tract belonged to him. As an attorney, Debtor should have known to disclose his seventeen percent interest in the third tract. As the Fifth Circuit has noted, "[D]ebtors have the absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate." *Flugence*, 738 F.3d at 130, n. 4 (internal quotation marks and citations omitted).

Second, in response to Question 1 on Official Form 106, Schedule A/B, (Doc. 53, p.3), Debtor failed to disclose the value of the other two tracts of property in DeSoto Parish. His Schedules say the value is "unknown." (Doc. 53, p. 4). At the hearing, Debtor was shown a copy of an appraisal conducted in late November 2021 (Doc. 159-1, p. 3) that set forth a value for all the tracts of land in DeSoto Parish, including the third tract, having an aggregate value of over $3,839,000. He professed to have never seen the appraisal.

Third, in response to Question 5 on Official Form 107, Statement of Financial Affairs for Individuals Filing for Bankruptcy ("SOFA") as originally filed (Doc. 54, p. 2) and his Amended SOFA (Doc. 114, p. 2), which asked Debtor to disclose his income during the two years before the bankruptcy case, Debtor failed to disclose $1,755,417.21 that he received from a transaction that occurred on March 26, 2021, resulting from the sale of assets from DIBBLE, LLC which were thereafter transferred to purchase an annuity for his sole benefit (which makes it income to Debtor). SOFA Question 5 is clear: "Include income regardless of whether that income is taxable." *See*, Official Form 107, Question 5. As such, Debtor had a duty to disclose that he received $1,755,417.21 as income from DIBBLE. On cross examination, Debtor was unable to explain why he failed to disclose the income.[3]

Fourth, in response to Question 5 on both the original and amended SOFAs, which asks Debtor to disclose his income, Debtor failed to disclose a $200,000 payment issued by LHM Holdings, LLC on his behalf to purchase an annuity. The general ledger of LHM Holdings, LLC lists a $200,000 payment to Debtor's annuity on July 16, 2020 (Doc. 152-17, p. 2). The general ledger of LHM2 Oil & Gas, LLC lists an additional $200,000 payment to Debtor's annuity on July 16, 2020, (Doc. 152-14, p. 4). Yet, on both the original and amended SOFAs, only one of the $200,000 payments was listed in the applicable section (Doc. 114, p. 2). Upon cross

---

[3] As an aside, the court notes that Debtor paid over $3,000,000 for two annuity contracts within one year before the filing of the involuntary petition. After the bankruptcy case was filed, he listed the annuity contracts as exempt assets on Schedule C (Doc. 53). The judgment creditors objected to the claimed exemption. (Doc. 66). The court sustained the objection and entered an order denying the claimed exemption (Doc. 102).

examination, Debtor was unable to address the discrepancy in the reporting.

Fifth, in response to Question 18 on both the original SOFA (Doc. 54, p. 6) and amended SOFA (Doc. 114, p. 6), which asked Debtor to disclose all transfers of property made within two years of the petition date, other than property transferred in the ordinary course of business, Debtor failed to disclose $258,016.28 in capital contributions made to Insanis, LLC. These transfers are significant because Debtor does not purport to own an interest in Insanis, LLC. Instead, according to Debtor, he owns Pilotage Holdings, LLC, which holds all interests in Insanis. At the hearing, Debtor asserted that his capital contributions of $258,016.28 were made in the ordinary course of business and thus he was not required to disclose them on SOFA Question 18. The capital contributions, however, were made by Debtor personally. Payment of capital to an entity that is not owned by Debtor cannot be characterized as a transfer made in the ordinary course of business.

### *Failure to Comply with Court Orders*

Defying a court order is "cause" to appoint a trustee. *In re Sillerman*, 605 B.R. at 645 (noting that "noncompliance with court orders" constitutes "cause" under § 1104(a)). Debtor has not complied with the court orders listed below.

1.  <u>Trust Judgment entered in the Trust Litigation on July 17, 2020</u>. In addition to the award of money to the judgment creditors, the Trust Judgment compelled Debtor to return property that had been improperly diverted from the

trusts.  It also ordered Debtor to pay the judgment creditors 49.640861% of any

income received by Marioneaux Properties, L.P., or its subsidiaries.  A portion of the

judgment has been stayed by virtue of the suspensive appeal.  The remainder of the

judgment has not been stayed.  Debtor failed to comply with the unstayed portion,

including the obligation to pay 49.640861% of the income to the judgment creditors.

2.     <u>Contempt Order entered in the Trust Litigation on April 14, 2021</u>.

Debtor's failure to comply with the Trust Judgment prompted the state court to

enter another ruling on April 14, 2021, which held Debtor in contempt of court.

(Doc. 162, p. 4).  Despite the contempt ruling, Debtor remains noncompliant with

the court's explicit directive regarding the return of income received from

Marioneaux Properties, L.P., or its subsidiaries.

3.     <u>Order entered in the Succession Proceeding on May 25, 2021</u>.  This

order (Doc. 152-3) required the transfer of various assets owned by the Succession

and the "freeze" of assets of any entities owned in whole or in part by Debtor's

father.  The order effectively barred the distribution of any money from accounts of

the entities owned by the Succession and prohibited the alienation of property

owned by those entities.  The order also required Debtor to produce documents.

Debtor has not complied with this order.  In fact, Debtor conceded that he violated

the order by making an unauthorized payment of $ 24,242.56 on June 1, 2021, from

Marioneaux Management, LLC to one of his wholly owned entities, Pilotage

Holdings, LLC. He denies that he did so intentionally. (Doc. 140-1, ¶ 14).

4.     <u>Contempt Order entered in the Succession Proceeding on October 11,</u>

<u>2021</u>.  Debtor's failure to comply with the document production requirements contained in the order previously entered on May 25, 2021, prompted the state court to enter an order of contempt. (Doc. 162, p. 10).  The court ordered the production of documents so that professionals can properly value the succession's assets.  This order has not been stayed.  Debtor has not complied with this order.  The noncompliance has prevented the valuation of the succession's assets and properties.

Debtor has shown little regard for complying with court orders.  This is particularly disturbing considering that Debtor is a lawyer.  Debtor's defiance of court orders constitutes "cause" to appoint a trustee.

### 3.  <u>Interests of Creditors and Other Interests of the Estate – 11 U.S.C. § 1104(a)(2)</u>

Under section 1104(a)(2), a trustee must be appointed if it is in the interest of creditors, equity security holders, and "other interests of the estate."  The language of the statute provides little guidance on how it is to be applied.  It is clear, however, that the court is called upon to weigh the interests of all constituencies in the case and not just those of creditors.

In this case, the estate's constituencies consist of only two groups – the creditors and Debtor.  As in any bankruptcy case, the court places the interests of creditors ahead of the interests held by Debtor.  Nevertheless, the court considered the impact an appointment of a trustee would have on Debtor and has concluded that the benefits of the appointment far outweigh any negative effects.

An appointed chapter 11 trustee will have "the statutory duty to protect and

preserve property of the estate for the purpose of maximizing a distribution to creditors." *In re Royal Alice Properties, LLC*, No. 19-12337, 2021 WL 150397, at *4 (Bankr. E.D. La. Jan. 15, 2021) (citations and quotations omitted). "A trustee also owes a fiduciary duty to each creditor of the estate." *Id.* The chapter 11 trustee will also be tasked with evaluating any settlement offers to resolve any claim against or on behalf of the estate, determining whether it is in the best interests of the estate by evaluating the merits of the case, the likely costs of litigation, and the interests of creditors. *Id.* That said, Debtor's interests here are aligned with those of a chapter 11 trustee, a fiduciary of the estate with the obligation to protect and preserve property of the estate. The court, therefore, concludes that the benefits to all interests of the estate that would come from the appointment of a trustee outweigh any potential detriment to the estate.

For purposes of appointing a trustee pursuant to section 1104(a)(2), courts have considered various factors. "Among the factors considered are: (i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation; (iii) the confidence—or lack thereof—of the business community and of creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment." *In re Royal Alice Properties, LLC*, No. 19-12337, 2020 WL 5357795, at *11 (Bankr. E.D. La. Sept. 4, 2020), *on reconsideration in part,* No. 19-12337, 2020 WL 5552576 (Bankr. E.D. La. Sept. 16, 2020) (citations omitted). The application of these factors to the debtor in possession in this case weigh heavily in

favor of the appointment of a trustee.

A chapter 11 trustee, who owes fiduciary duties to Debtor and all creditors, will be able to get up to speed quickly to administer the estate and its properties. A trustee will be able to negotiate with creditors objectively and provide transparency and reliability to creditors, the United States Trustee, and this court regarding the finances and financial affairs of Debtor. The appointment of a trustee is the best hope to maximize distributions to creditors from the estate. The court, therefore, finds that a trustee must be appointed pursuant to § 1104(a)(2).

### 4. Other Reasons Offered by the Judgment Creditors as Justifications for the Appointment of a Trustee

For the sake of completeness, the court notes that the judgment creditors offered several additional reasons to support the appointment of a trustee. After careful consideration, the court rejects all justifications offered by the judgment creditors, other than the justifications set forth above.

First, the judgment creditors argue that a trustee should be appointed because Debtor failed to accurately respond to Question 23 on Official Form 107 of the original SOFA (Doc. 54, p. 8), which asked whether Debtor holds or controls property that someone else owns. The judgment creditors complain that Debtor failed to identify that he has signatory authority over bank accounts of twenty-seven separate entities, including accounts for entities in which the judgment creditors own a significant interest. Debtor, however, promptly amended his response to Question 23 (Doc. 114, p. 8) to list the bank accounts after the judgment creditors complained about his initial non-disclosure. Considering that Debtor

promptly cured this deficiency when it was called to his attention, this court will not penalize him for the omission on his original SOFA.

Second, the judgment creditors complain that Debtor failed to adequately respond to Question 19 on Official Form 106, Schedule A/B (Doc. 53, p. 9), which asks Debtor to supply values of his assets. While the judgment creditors correctly note Debtor failed to list a value for two of the estate's most valuable assets (Pilotage Holdings, LLC and Marioneaux & Williams, PC, a Texas corporation), those assets are closely held companies which, by their nature, are difficult to value. The failure to supply a value of these closely held companies does not justify the appointment of a trustee. While this court is troubled by Debtor's testimony that he has not taken any steps to determine the valuation of his closely held companies, the court will not use his inaction as justification to appoint a trustee.

Third, the judgment creditors complain that Debtor failed to adequately respond to Question 23 on the original SOFA (Doc. 54, p. 8) and amended SOFA (Doc. 114, p. 8) because he failed to disclose that he is holding or controlling a private jet for the benefit of Insanis, LLC (which, he contends, owns the jet). Debtor's interest in Insanis is listed on Schedule A/B through the listing of Pilotage Holdings, LLC (Doc. 53, p. 9). Debtor's response to Question 23 does not justify the appointment of a trustee.

Fourth, the judgment creditors complain that Debtor used the private jet owned by Insanis for his own personal benefit and, therefore, had an obligation to report on his chapter 11 monthly operating reports all disbursements made by

Insanis on Debtor's behalf. The monthly operating report contains a section (Part 1, line e.) which requires disclosure of disbursements made by a third party for the benefit of the estate. *See*, UST Form 11-MOR: Monthly Operating Report. The judgment creditors, however, failed to meet their burden to show that the jet was used for Debtor's personal use. There was a lot of smoke, but no fire, on this issue.

Fifth, the judgment creditors complain that Debtor failed to comply with an order issued by this court on November 16, 2021 (Doc. 106) that required him to supply certain information to the judgment creditors. The evidence establishes that Debtor produced over 4,000 pages of detailed financial records in compliance with this court's order. The judgment creditors failed to satisfy their burden that Debtor violated the order.

Sixth, the judgment creditors complain that Debtor violated the state court's order by paying his attorneys' fees with funds from the Succession Entities. Although it is true that Debtor issued a check to his attorney on an account held by a Succession Entity, (Doc. 152-4, p. 11), the check was never negotiated by the attorney. The judgment creditors failed to carry their burden that Debtor violated the order by issuing a check that was never negotiated by the payee.

Finally, the judgment creditors argue that a trustee must be appointed because Debtor filed inaccurate federal income tax returns before this case was commenced. The court reserves judgment on whether the tax returns were inaccurate. This court has the power to determine the tax liability of the estate

pursuant to 11 U.S.C. § 505. This is an issue for another day. It is not justification for the appointment of a trustee.

## Conclusion

Debtor's express, affirmative duty to disclose all assets, is a continuing one and cannot be overemphasized. By any measure, Debtor failed to comply with this duty. A debtor that fails to disclose material assets should not serve as a debtor in possession.

Based on the totality of the facts and circumstances discussed above, this court concludes that "cause" exists as contemplated under 11 U.S.C. § 1104(a)(1), such that a chapter 11 trustee must be appointed in lieu of Debtor continuing to serve as a debtor in possession. This court also concludes that such appointment of a trustee is in the interests of creditors and "other interests of the estate" as contemplated under 11 U.S.C. § 1104(a)(2). Accordingly, the court **GRANTS** the motion to appoint a trustee.

This ruling constitutes findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 made applicable by Fed. R. Bankr. P. 9014(c). The court will enter a separate order in accordance with this ruling.

###