**SO ORDERED.**

**DONE and SIGNED October 12, 2022.**



_____
**JOHN S. HODGE
UNITED STATES BANKRUPTCY JUDGE**

---

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case Number: 21-10421 |
| | § | |
| Lucien Harry Marioneaux, Jr. | § | Chapter 11 |
|   Debtor | § | |
| | § | |

## Memorandum Ruling

This case involves allegations of fraudulent conduct by a lawyer (the Debtor) who was sued in state court by his aunt, individually and in her capacity as co-trustee of a trust. The litigation resulted in a judgment against Debtor for his breaches of trust, mismanagement of funds, failure to account and fraud. The judgment creditors hold claims exceeding $8 million. The judgment is currently on appeal.

Several months after the bankruptcy case was filed, this court appointed a chapter 11 trustee who now seeks authority to enter into a compromise agreement

with the judgment creditors. If approved, the compromise would, among other things, result in the dismissal of the appeal and the allowance of the full amount of the proof of claim filed by the judgment creditors. It would also result in the transfer of money and property to the bankruptcy estate which could be used to satisfy allowed claims held by non-settling parties.

For the reasons that follow, the court concludes that the settlement is fair and equitable, is in the best interest of the estate, and meets the factors set forth by the Fifth Circuit for approval of a settlement. Therefore, the compromise should be approved.

## Background

The salient facts are summarized below:

1. On June 4, 2021, certain creditors commenced this proceeding against Lucien Harry Marioneaux, Jr. ("**Debtor**") by filing an involuntary petition in this court requesting relief under chapter 7 of the Bankruptcy Code. Debtor initially challenged the involuntary petition and the venue of this case. However, on August 31, 2021, an agreed order for relief was entered under chapter 7. Debtor then requested that his case be converted to one under chapter 11. The court converted the case on August 31, 2021.

2. Upon conversion, Debtor remained in possession of all property of the estate and was vested with the rights, powers, and duties of a debtor in possession as set forth in 11 U.S.C. § 1107.

3. On January 26, 2022, this court appointed a chapter 11 trustee. As a

result, Debtor ceased to have the powers of a debtor in possession.

  4.  Debtor is licensed to practice law in the State of Louisiana.

  5.  Before the commencement of this case, Debtor was involved in two state court proceedings pending in Louisiana. Those actions are referred to as the "**Trust Litigation**" and the "**Succession Proceeding**," more particularly described as: *Marioneaux vs. Marioneaux*, Case No. 588,685-A, First Judicial District Court, Caddo Parish, Louisiana and *Succession of Lucien H. Marioneaux*, Case No. 594,635-B, First Judicial District Court, Caddo Parish, Louisiana.

  6.  The Trust Litigation was filed by Debtor's aunt, Mary Sue Marioneaux, individually and in her capacity as co-trustee of the Lela Mae Johnson Marioneaux Trust ("**LMJM Trust**"). She is the petitioning creditor in this bankruptcy case. Among other things, the suit alleges that Debtor and his father committed breaches of trust and fraud. Soon after the Trust Litigation was commenced, Debtor's father died. His father's succession was substituted as a defendant. After a trial on the merits, the court entered a judgment (the "**Trust Judgment**") finding that Debtor and his father breached their fiduciary duties as trustees of various trusts that fraudulently deprived Mary Sue Marioneaux and her trust of valuable assets.

  7.  The Trust Judgment stated that Debtor breached his fiduciary duty as a trustee, "including the duty of loyalty, by engaging in intentional acts of willful fault, misconduct, gross negligence and fraud" in his administration of certain trusts at issue in that litigation. (Doc. 152-1). The trial court rendered judgment

against Debtor, his father's succession, and the various companies to which they diverted the trust money and property. Among other things, the judgment awarded over $6 million in monetary damages plus judicial interest and over $1.5 million in attorney fees and other costs. The judgment also required Debtor to return property that had been improperly diverted from the trusts. The trial court permitted Debtor to file a "suspensive appeal" with respect to certain portions of the judgment and a "devolutive appeal" with respect to the remainder.[1]  (Doc. 11-2, p. 5).  The appeal is pending.

8.     When Debtor's father passed away, the Succession Proceeding was commenced in the same court where the Trust Litigation is pending.

9.     Debtor's father died without a will.  Debtor is the only descendant and intestate heir of his father's estate. Subject to the appeal in the Trust Litigation, the judgment creditors have claims against Debtor's father's estate in the Succession Proceeding.

10.    Debtor was the original independent administrator in the Succession Proceeding. Following the entry of the Trust Judgment, however, he was removed as the administrator, in part for his failure to properly inventory and account for the assets of his father's succession. (Doc. 11-5). Thereafter, a successor administrator was appointed by the state court, who later resigned. (Doc. 11-6).

11.    After the commencement of this bankruptcy case, Mary Sue

---

[1] Under Louisiana law, a suspensive appeal is one that suspends the effect or execution of a judgment. LA. CODE CIV. PROC. art. 2123.  By contrast, a judgment creditor may enforce a judgment subject to a devolutive appeal as soon as the delays for suspensive appeal have elapsed.  LA. CODE CIV. PROC. art. 2252.

Marioneaux was appointed as the provisional administrator in the Succession Proceeding.

12. This court entered an order (Doc. 13) modifying the automatic stay to: (a) allow the appeal of the Trust Judgment to proceed; and (b) allow the administration of the Succession Proceeding to proceed. However, no acts to collect, assess, enforce, or recover upon any order or judgment in the Trust Litigation and/or the Succession Proceeding against the Debtor or against any property of the bankruptcy estate are permitted absent further order of this court.

13. The bankruptcy estate owns an interest in various entities. The estate owns 100% of the membership interest in Pilotage Holdings, LLC, which in turn holds:

    a. a 100% membership interest in MarionAV, LLC;

    b. a 51% membership interest in Come On Dawg, LLC;

    c. a 100% membership interest in Marioneaux Law Firm, APLLC;

    d. a 100% membership interest in Insanis, LLC;

    e. an undetermined percentage interest in Galenfeha, Inc.;

    f. a 100% membership interest in LHM2 Oil & Gas, LLC;

    g. a 50% membership interest in LHM Holdings, LLC;

    h. a 100% membership interest in Zero Tango Echo, LLC;

    i. a 50% membership interest in Wallace Lake Marioneaux, LLC (which holds a 51% membership interest in River Cities Machine, LLC and an unknown membership interest in Red River Range, LLC);

j.   a 100% membership interest in Marioneaux Auto Group, LLC; and

k.   a 50% membership interest in Marioneaux Management, LLC, which, in turn, owns a 1.496409% general partnership interest in Marioneaux Properties, L.P., a Texas limited partnership.

14. The bankruptcy estate also owns a 50% membership interest in Marioneaux & Williams, A Texas Professional Corporation, which owns a 100% interest in Marioneaux & Williams, LLC, a Louisiana limited liability company (the law firm through which Debtor practices law).

15. The bankruptcy estate also holds an indirect interest, through Debtor's father's succession, in the following entities (the "**Succession Entities**"):

a.   a 50% membership interest in Marioneaux Management, LLC (the other 50% interest is owned by Pilotage Holdings, LLC);

b.   a 48.86273% limited partnership interest in Marioneaux Properties, L.P. (in which Marioneaux Management, LLC serves as the general partner and) which, in turn, owns:

   i.   a 100% membership interest in HBM Interests, LLC;

   ii.  a 100% membership interest in HBM CMS, LLC; and

   iii. a 100% membership interest in HBM Oil & Gas, LLC.

c.   a 100% membership interest in LHM Oil & Gas, LLC;

d.   a 50% membership interest in LHM Holdings, LLC;

e.   a 50% membership interest in Wallace Lake Marioneaux, LLC; and

f.   a 50% membership interest in 80 Acres, LLC.

16. These entities own significant assets that have substantial value.

17. Mary Sue Marioneaux owns interests in various Succession Entities, including a 49.640861% limited partnership interest in Marioneaux Properties, L.P.

## Conclusions of Law and Analysis

### A. Jurisdiction, venue and core status

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a) and LR 83.4.1. Venue is proper in this district. 28 U.S.C. §§ 1408 and 1409(a). This matter constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

### B. The Proposed Compromise

Debtor's aunt, Mary Sue Marioneaux, reached a settlement with the bankruptcy trustee to resolve all her claims. She appears in this case in her individual capacity as a judgment creditor, as co-trustee of her trust (which is also a judgment creditor) and as the provisional administrator of Debtor's father's succession. By virtue of the Trust Judgment, she is a creditor in this bankruptcy case and in the Succession Proceeding.

The proposed compromise would settle all of her claims, including: 1) her proof of claim filed in this bankruptcy case (which is based on the Trust Judgment), 2) any claims that she may have against Debtor or the bankruptcy estate arising out of Debtor's prior exclusive control over Marioneaux Properties, LP (which is a limited partnership that is co-owned by her, the bankruptcy estate and the

Succession estate), and 3) any claim that she or the Succession may have arising from Debtor's alleged breach of his duties as the independent administrator of his father's Succession and/or in his capacity as manager of various Succession Entities (the "**Additional Claims**").[2]

The proposed compromise is set forth in a "Term Sheet." It is complex. The compromise would transfer money and property from the Succession (but not the bankruptcy estate) to the judgment creditors. It would also result in the Succession transferring money and property to the bankruptcy estate which could not be used to satisfy the claims of the judgment creditors, except under certain limited conditions. Approval of the compromise would also cause the dismissal of the appeal of the Trust Litigation.

Specifically, the proposed compromise would:

a. dismiss the appeal of the Trust Judgment;

b. allow, in full, the proof of claim filed by the judgment creditors in the amount of $8,391,724.92, subject to a post-petition partial credit in the amount of $146,725.50;

c. permit the trustee to continue the liquidation of Marioneaux Management, LLC with net proceeds disbursed to the bankruptcy estate and the provisional administrator in accordance with their respective membership interests;

d. dissolve and liquidate Marioneaux Properties, LP, with net proceeds disbursed to the bankruptcy estate (via its interest in the liquidation of Marioneaux Management), the Succession, and Mary Sue Marioneaux as the co-trustee of her Trust;

e. assign to the bankruptcy estate (1) $500,000 in cash, plus (2) the

---

[2] The trustee's motion itemizes, with supporting evidence, many of the Additional Claims, and estimates that those claims exceed $1,000,000.

Succession's membership interest in LHM Holdings, LLC, each free and clear of any claim of the judgment creditors or any other amount owed by Debtor to the Succession, but not free and clear of any alleged criminal restitution obligation of Debtor to the judgment creditors or the Succession;

f. release Debtor and the bankruptcy estate from the obligation to return (1) 49.640861% of Debtor's interest in the DeSoto Parish Property pursuant to the third paragraph of the Trust Judgment and (2) 27.5555% of the income from December 31, 2018 until March 2022, attributable to the portion of the Debtor's interest in the DeSoto Parish Minerals, which Debtor previously returned to the LMJM Trust, pursuant to paragraph 5 of the Trust Judgment dated August 29, 2017;

g. release the judgment creditors' judicial lien upon Debtor's Texas residence (but not their claim for non-exempt proceeds from any sale of that residence as to any unsecured portion of their proof of claim);

h. release the judgment creditors' judicial mortgage on any interest of the Debtor in any immovable property located in DeSoto Parish arising from the recordation of the Trust Judgment in DeSoto Parish;

i. reserve the judgment creditors' right to file claims under section 503(b)(3)(A) and (D) and agree to subordinate any fees awarded to all other allowed administrative claims, with the trustee agreeing not to object except as to fees and expenses considered by him not to be actual, necessary, or beneficial to the bankruptcy estate;

j. other than the allowed claim filed by the judgment creditors, release the judgment creditors' and Succession's other claims against the Debtor and the Estate except: (1) for claims against Debtor in the pending adversary proceeding; (2) obligations under the Term Sheet; (3) claims for taxes, interest or penalties owed by the Succession as a result of any alleged failure of Debtor to report income attributable to the Succession and pay taxes owed by the Succession from July 16, 2016 until March 29, 2022; (4) any alleged criminal restitution claim against the Debtor; (5) claims against the Debtor, the Estate, and entities in which the Succession has an interest arising out of any alleged liability of the Debtor arising out of alleged disproportionate distributions that he received, directly or indirectly, from entities other than LHM Holdings, in which the Succession has an interest and which under applicable law or IRS requirements require a reallocation of member interests in such entities;

k. provide a "waterfall" distribution scheme for satisfaction of the claim filed

by the judgment creditors, which includes utilization of an appraisal of the DeSoto Parish Property;

l. include reciprocal releases; and

m. address procedural implementation steps.

C. **Standards to Evaluate the Proposed Compromise**

Bankruptcy Rule 9019 authorizes the trustee to seek an order approving a compromise or a settlement. Specifically, the Rule provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a).

Compromises in bankruptcy are a "normal part of the process of reorganization, oftentimes desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 354 (5th Cir. 1997) (citing *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). Courts are empowered to approve a compromise under Rule 9019(a) if the trustee or debtor in possession meets its burden to show that it is "fair and equitable and in the best interest of the estate." *Jackson Brewing Co.*, 624 F.2d at 602.

When analyzing whether to approve a settlement under Rule 9019, this court must determine whether it is "fair equitable" using the following test:

Five factors inform the "fair and equitable" analysis: (1) the probability

> of success in the litigation, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay, including the difficulties, if any, to be encountered in the matter of collection; (3) the paramount interest of the creditors and a proper deference to their respective views; (4) the extent to which the settlement is truly the product of arm's-length bargaining and not fraud or collusion; and (5) all other factors bearing on the wisdom of the compromise.

*In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010), citing *In re Jackson Brewing Co.,* 624 F.2d 599, 609 (5th Cir. 1980) and *Matter of Foster Mortg. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995).

Evaluating a Rule 9019 settlement does not require a bankruptcy court to "conduct a mini-trial to determine the probable outcome of any claims waived in the settlement," but rather the court must "apprise [itself] to the relevant facts and law so that [it] can make an informed and intelligent decision." *In re Age Refining, Inc.*, 801 F.3d 530, 541 (5th Cir. 2015) (citing *In re Cajun Elec. Power Coop.*, 119 F.3d at 356). "The trustee, or debtor in possession, bears the burden of establishing that the balance of the *Jackson Brewing* factors supports a finding that the compromise is fair, equitable, and in the best interests of the estate. This burden is not a high one, and the debtor in possession need only show that [its] decision falls within the range of reasonable litigation alternatives." *In re Express Grain Terminals, LLC*, No. 21-11832-SDM, 2022 WL 1311533, at *15 (Bankr. N.D. Miss. May 2, 2022) (internal citations and quotation marks omitted).

The court will address each factor.

*1. The probability of success in the litigation*

The judgment creditors filed a proof of claim in this bankruptcy case. The proposed settlement would result in the allowance of the claim. The claim is based

on the final judgment rendered by the state court. The judgment is on appeal. Thus, assessing the probability of success in the litigation requires an assessment of the merits of the appeal filed by Debtor.

The appeal has been fully briefed and argued. According to the briefs, the issues include a challenge to the sufficiency of the pleadings (Debtor contends that the pleadings failed to adequately allege fraud), the sufficiency of the evidence (Debtor challenges the trial court's findings about the adequacy of the evidence) and the applicability of trust law (Debtor claims that he was not a trustee of the applicable trusts involved in the litigation).

At the urging of Debtor's counsel, this court closely reviewed the appellate briefs submitted by the parties. After considering the appellate briefs, the applicable law, and the findings of the trial court, this court determines there is a high probability that the Trust Judgment would be affirmed on appeal.

This court's determination about the probability of success on the merits is also consistent with the trustee's determination. At the hearing, the trustee (who is a lawyer) testified that he reviewed the appellate briefs and consulted with his own counsel regarding the strengths and weaknesses of the appeal. Thereafter, the trustee concluded that there is a high probability that the Trust Judgment would be affirmed on appeal.

In reaching its determination regarding the probability of success, this court apprised itself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated on appeal. The facts,

with citations to the record, are outlined in the trustee's motion to approve the compromise and will not be repeated here. They are also set forth in the appellate briefs which have been filed into the record of this bankruptcy case.

For these reasons, the first factor leans in favor of approval of the compromise.

*2. The complexity and likely duration of the litigation*

The second factor requires this court to consider the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay, including the difficulties, if any, to be encountered in the matter of collection.

Collection is not an issue in this case because even if Debtor were to be successful on the merits, there would be nothing for him (or the bankruptcy trustee) to collect. Debtor is a defendant in this matter. The only parties at risk of encountering collectability issues are the judgment creditors.

With respect to the complexity and likely duration of the litigation, this court finds that the issues presented in the appeal are complex and there is a high likelihood that the appeal would be lengthy, expensive, inconvenient, and cause delay if the appeal continues. Although the appellate briefs have been submitted to the Louisiana First Circuit Court of Appeal, the ruling from that court would likely be appealed to the Louisiana Supreme Court. Such an appeal would undoubtedly be expensive and could cause significant delays.

By remote chance, if the appeal results in a remand, the result would be more litigation, more discovery, more uncertainty and more expense. The Trust Litigation

has been pending for over six (6) years and the parties have incurred well over $2 million in litigation expenses. Continuing that litigation would be, without question, expensive and time consuming.

At the hearing, the trustee expressed his desire to administer the estate as expeditiously as is compatible with the best interests of all parties in interest. If the settlement is approved, it would result in a speedy resolution of the proof of claim filed by the judgment creditors and promote an expeditious administration of the estate.

Accordingly, the second factor weighs in favor of approving the compromise.

*3. The interests of the creditors with proper deference to their reasonable views*

The third factor requires the court to consider the paramount interest of the creditors and to give proper deference to their respective views. In this case, no creditor objected to the proposed settlement. In fact, the primary creditor in the case is one of the settling parties (Mary Sue Marioneaux). Nevertheless, this factor is the most contested factor in the analysis.

While the "paramount" status afforded to the interest of creditors recognizes that the decision to settle or litigate is an investment decision that risks their money and their rights, the court may not ignore the interests of non-creditors when their rights are impacted. When a proposed compromise implicates the interests of a non-settling third party (including the pecuniary interests of a debtor), the court must consider the third party's interests in deciding whether to approve the compromise. *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir. 1984) ("[e]ven if a

settlement is fair and equitable to the parties to the settlement, approval is not appropriate if the rights of others who are not parties to the settlement will be unduly prejudiced"); *In re Zale*, 62 F.3d 746, 764 (5th Cir. 1995) ("When third parties are affected, we scrutinize carefully the fairness of the hearing afforded."); *Cullen v. Riley (In re Masters Mates & Pilots Pension Plan),* 957 F.2d 1020, 1026, 1031 (2nd Cir. 1992) (holding that "where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval," and requiring determination that "no one has been set apart for unfair treatment").

The issues involved in the appeal are complex and the stakes are high. Debtor's interests are impacted by the proposed compromise. If Debtor is correct about any of his appellate challenges, the judgment would be reversed, thereby eliminating a claim against him and the bankruptcy estate exceeding $8 million. If the claim is eliminated, there is substantial likelihood that Debtor would be entitled to a recover the residual estate, after payment of all allowed claims. If that happened, Debtor would likely recover money and property that have substantial value. If, however, the claim is allowed as filed, Debtor would almost certainly recover nothing from the estate. Thus, Debtor has a pecuniary interest in the outcome of the appeal and the allowance or disallowance of the proof of claim.

In this case, the court must determine if the settlement is fair to the non-settling parties. Simply put, this court must determine if Debtor's interests are being *unfairly* prejudiced by the proposed compromise. For the reasons that follow,

the court concludes that his interests will not be *unfairly* prejudiced if the compromise is approved.

First, the interests of creditors and debtors should not be treated equally. Putting creditors' interests ahead of a debtor's interests, does not *unfairly* prejudice the debtor. The hierarchy of the Bankruptcy Code provides that the interests of creditors are paramount to the interests of debtors. The trustee and the court must act in accordance with this hierarchy.

Second, the proposed compromise contains provisions that are beneficial to Debtor. For example, the compromise would release Debtor from his obligations under the Trust Judgment to return to the LMJM Trust the designated percentage of his interest in certain immovable property located in DeSoto Parish and a certain percentage of the income he received from certain minerals from December 31, 2018, through March 2022.

Finally, the compromise would result in the bankruptcy estate receiving from the Succession: (1) $500,000 in cash, plus (2) the Succession's membership interest in LHM Holdings, LLC. Those assets may not be used to pay any portion of the claims held by the judgment creditors (other than in the case of any criminal restitution obligation of Debtor). That means those assets or the proceeds derived from their disposition would be distributed to Debtor assuming all his other creditors, except the judgment creditors and the Succession, have been paid. In other words, as part of the compromise, the bankruptcy estate is (a) receiving significant assets from the provisional administrator of the Succession and (b) being

released from certain obligations under the Trust Judgment. Neither the bankruptcy estate nor Debtor would receive any of these benefits without approval of the compromise.

The court closely scrutinized the fairness of the proposed compromise and determined that it does not unfairly prejudice the Debtor's interests. Thus, the court finds that the third factor weighs in favor of approving the proposed settlement.

*4. Extent to which the settlement is the product of arm's length bargaining.*

This factor weighs in favor of approval of the compromise. No party has challenged whether the settlement is the product of arm's length bargaining. Moreover, there is no evidence of collusion or fraudulent behavior by the settling parties.

*5. Other factors bearing on the wisdom of the compromise*

The court finds that approval of the compromise would 1) promote the integrity of the judicial system, 2) provide the bankruptcy estate with an additional pool of assets available for distributions to the holders of allowed claims (exclusive of claims held by the judgment creditors), and 3) eliminate over $1,000,000 of the Additional Claims arising from Debtor's misconduct as the independent administrator of the Succession.

The court also finds that the proposed compromise complies with the Fifth Circuit's standards applicable to pre-plan settlements. *See, In re AWECO, Inc.*, 725 F.2d 293 (5th Cir. 1984). In *AWECO*, the Fifth Circuit held that the absolute priority rule applies to pre-plan settlements, concluding that "a bankruptcy court

abuses its discretion in approving a [pre-plan] settlement with a junior creditor unless the court concludes that priority of payment will be respected as to objecting senior creditors." *Id.* at 298. In this case, the court concludes that the costs of the settlement will not deplete the estate in any manner (because the assets used to satisfy the judgment creditors' claim will come from the Succession, not the bankruptcy estate) nor will it jeopardize the priority position of any senior creditor or administrative creditor.

The court concludes that the proposed compromise's distribution scheme complies with the Bankruptcy Code's priority scheme. The court is satisfied that the parties to the proposed compromise have not agreed to the terms of a settlement to avoid the priority strictures of the Bankruptcy Code.

## Conclusion

The factors established by the Fifth Circuit weigh heavily in favor of approving the compromise and demonstrate to the court that the compromise is well within the range of reasonableness. The court concludes that the settlement as a whole is fair and equitable and in the best interest of the estate. The settlement is reasonable in relation to the likely outcome of the litigation and it properly balances the interests of all stakeholders with the likely pitfalls of litigation.

The trustee properly exercised his reasonable business judgment to determine that the benefits of the settlement outweigh its costs after considering the probability of success in litigating the claims, the complexity and likely duration of the litigation and related expenses and inconvenience, and all other factors

bearing on the wisdom of the compromise, including the interests of the creditors and non-settling parties. In addition, this court apprised itself of all facts necessary to evaluate the settlement and made an informed and independent judgment about the settlement.

For the reasons noted above, the court hereby approves the settlement.

This ruling constitutes findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 made applicable by Fed. R. Bankr. P. 9014(c). The court will enter a separate order in accordance with this ruling.

###